**People of the State of Illinois, Plaintiff-Appellee, v. John Brown (Impleaded), Defendant-Appellant.**

**Gen. No. 53,095.**

First District, Third Division.
December 11, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Kavanaugh, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a jury trial the defendant was found guilty of burglary, and after a hearing in aggravation and miti-

gation the court sentenced him to a term of 12 to 20 years in the State Penitentiary. He contends on appeal that (1) he was not proven guilty beyond a reasonable doubt, (2) his alibi should not have been disregarded, and (3) the sentence imposed was excessive. The facts follow.

On February 15, 1967, a printing shop at 719 Willow Street, Chicago, was burglarized. Galleys and linotype mats valued at about $9,000 were taken. Alfred Kalnajs, the owner of the shop, was away on vacation. Before leaving on February 10th he gave the keys to the shop to Janis Pencis, whom he had known for over 15 years, so that Pencis could check the premises and turn on the heat. Pencis testified that on the morning of February 15, 1967 when he went into the shop, he encountered four negroes, one of whom was the defendant. On seeing Pencis the defendant asked him what he was doing there. Pencis replied that he had come to look at the shop and to turn on the heat and proceeded to the boiler room in the basement. When he sought to return to the main floor, his way was blocked by a man holding a mallet who told him to remain downstairs. Pencis then heard sounds of dragging and "of lead materials being poured off a plate." After 15 or 20 minutes the noise abated and defendant entered the basement. He warned Pencis not to call the police because he "didn't have all the materials he wanted." The witness waited until he heard the men leave and then went upstairs and looked out of the front door, where he was able to observe the defendant and three other men pushing a shopping cart loaded with "coal-type sacks filled with materials." He telephoned the police and went to look for a squad car. He saw the defendant returning to the shop with an empty cart. When the defendant saw Pencis, he ran up to him and asked whether he had called the police and told him that if he had, "it wouldn't be safe" for him around

the neighborhood. After the defendant left, Pencis continued his search for a police car. He returned to a corner where he could see the shop and saw a squad car parked nearby. As he approached the police car he saw the defendant and another man sitting in the back seat. Upon recognizing defendant, Pencis said to the police officer, "I see you got them."

Lillie London, a police crossing guard, was a witness for the State. She testified that she was stationed at the corner of Burling and Willow Streets, the intersection adjacent to the printing shop, that she arrived for work at 7:45 a. m. and stayed until approximately 9:00 a. m. and that at about 8:20 a. m. on the day in question she saw three young negroes going west on Willow Street with three shopping carts. Her testimony corroborates that of Pencis, except that she claimed to have seen three men, not four, pushing three carts, not one. She also saw a squad car parked in front of the printing shop.

The arresting police officer, Leonard Wasicki, testified that he received a call over his radio relative to 719 Willow Street, the address of the printing shop. As he approached the area, he saw two men in a gangway between the premises at 719 and 721 Willow Street. When the men saw the police car, they fled. Wasicki then drove around the block onto Burling Street and saw the same two men running down another gangway. As he pulled up, they stopped, threw snowballs at each other and then got into the squad car. Wasicki returned to 719 Willow Street where Pencis later met him.

Defendant undertook to establish an alibi. He testified that he left his apartment at 1657 North Halsted Street, a distance of about two blocks from the burglarized premises, at about 8:00 a. m. to see if a laundromat was open. Upon finding it closed, he proceeded to a grocery store in the vicinity of North Avenue (1600

44

north) and Frontier Street, which was also closed. Deciding to return to his apartment, he proceeded north on Burling Street to a point about 120 feet from Willow Street, where he was arrested. He did not know the man with whom he was arrested other than as a pedestrian walking south on Burling Street at the time of the arrest.

Defendant's fiancee Priscilla Miles testified that she had spent the night preceding the alleged burglary at defendant's apartment and that on the morning of February 15, 1967 he did not leave the premises until 8:00 a. m., when at her request he went to see if a laundromat at North Avenue and Burling Street was open.

 Defendant contends that the evidence for the State was not only entirely circumstantial but was also conflicting. The fact that evidence is circumstantial does not, in itself, detract from its probative value since "under certain conditions circumstantial evidence may be more accurate than direct." People v. Bailey, 90 Ill App2d 121, 234 NE2d 332. Wigmore points out that it is impossible to ascribe a greater weight to one class of evidence than to the other. 1 Wigmore, Evidence, § 26 (3rd ed 1940). Here the defendant was seen on the burglarized premises at the time the sound of dragging and of lead materials being poured off a plate was heard. That evidence, coupled with the fact that about 21,000 lead slugs weighing approximately 6,000 pounds were emptied from 260 galleys, strongly supports the State's case that a burglary was taking place while defendant was upstairs and that he participated in it. This is further corroborated by Pencis' testimony that he saw defendant pushing filled sacks in a shopping cart down the street away from the shop and by defendant's own incriminating statement to Pencis that he had not gotten all he wanted. The jury chose to be-

45

lieve Pencis' account of the events on the day of the burglary and that evidence amply sustains the verdict.

Defendant stresses an apparent conflict in the testimony of Pencis and that of Lillie London as to the number of men involved and the number of carts used on the job. That is not a material conflict. There is evidence in the record of multiple trips, thereby raising the possibility that the witnesses observed two separate occurrences. In any event it is an incidental issue involving a question of credibility which was for the jury to decide.

■ Defendant's next contention is that his alibi evidence "should not have been disregarded." The testimony on which an alibi is based should place the defendant far enough away from the scene of the crime to render it impossible for him to have participated in it. People v. Thomas, 393 Ill 573, 67 NE2d 192; People v. Lukoszus, 242 Ill 101, 89 NE 749. Defendant lived only a few blocks from the printing shop and was apprehended by Officer Wasicki a short distance from the scene of the crime. It is therefore clear that he could have easily reached the burglarized premises and have participated in the crime. There is no merit in this point. We proceed to consider defendant's final contention, that the sentence imposed was excessive.

At a hearing in aggravation and mitigation it was disclosed that the defendant, although only 26 years old, had a long record. In 1959 he was sentenced to serve one to three years in the penitentiary for robbery. In 1962 he was again convicted for robbery and on that occasion received five years probation. One month later he violated his probation and received two to three years in the penitentiary. In 1965 he received thirty days for shoplifting. He now stands before us convicted of burglary. The applicable penalty provision provides for an indeterminate term in the penitentiary of not less than one year. Ill Rev Stats, c 38, § 19–1(b)

(1967). The sentence imposed was imprisonment for not less than twelve nor more than twenty years.

■ ■ The appellate power to reduce sentence should be applied cautiously since the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed. People v. Nelson, 41 Ill2d 364, 243 NE2d 225; People v. Taylor, 33 Ill2d 417, 211 NE2d 673. Considering defendant's prior felony record, the sentence was not excessive.

Judgment affirmed.

DEMPSEY, P. J. and McNAMARA, J., concur.