THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID McKAY, Defendant-Appellant.

Second District   No. 84—0700

Opinion filed November 20, 1985.

Ronald Anthony Rascia, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Phyllis J. Perko and Cheri A. Novak, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

On July 23, 1984, after a jury trial in the circuit court of Du Page County, the defendant, David McKay, was found guilty of residential burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—3) and sentenced to seven years' incarceration. On appeal defendant argues, (1) that the State failed to prove his guilt beyond a reasonable doubt; (2) that he was denied a fair trial by the prosecutor's closing arguments; (3) that the trial court erred in instructing the jury; (4) that the trial court erred in denying him a continuance prior to trial; (5) that the trial court erred in denying the jury's request to review the transcript of a defense witness' testimony; (6) that the residential burglary statute is unconstitutional; and (7) that his sentence of seven years was excessive and amounted to cruel and unusual punishment.

The victim, Donna Pfeiffer, testified that she left her apartment, apartment No. 3, at 329 Kimball in Elmhurst, in good condition at approximately 3 p.m. on March 6, 1984. After being notified by the police of a break-in, she returned at 9:15 p.m. to find her apartment ransacked and several items of personal property missing. Pfeiffer had not given anyone else permission to enter her apartment that day.

Pfeiffer's neighbor, Mary Ann Kragel, testified that she looked

out her bedroom window just prior to 7 p.m. on the night of the burglary and observed a man sitting in a car in the parking lot. She later identified the car as defendant's. Kragel continued to look out the window for several minutes and saw the man get out of the car and walk around the apartment building. At approximately 7:15 p.m. she looked out her living room window and saw the same man, a black male, 5 feet 8 inches to 5 feet 10 inches, thin, 165 to 170 pounds, wearing a blue hooded sweatshirt, walking directly in front of her window. At this point the man, whose face was only a foot away from her face, turned and looked directly at her for approximately five seconds. Kragel identified this man as defendant in a photo line-up conducted later that evening at the Elmhurst police station as well as in court. Kragel also testified that the car defendant had been sitting in had been moved to a different area of the parking lot and was backed into a parking space against the building with its trunk lid up.

A second neighbor, Robert Crawford, testified that at 7:10 p.m. on the night of the burglary, he saw defendant's car, a red and white early 1970's Pontiac, license number BYM818, backed into a parking space with its trunk open. Crawford then saw a black male, 5 feet 8 inches to 5 feet 10 inches, approximately 150 to 160 pounds, wearing a blue hooded sweatshirt, carry two speakers to the car and place them in the trunk. The man began to walk back to the apartment building, then suddenly turned around, slammed the trunk and drove away.

The State next called two Chicago police officers, Officer John Staszak and Officer Gilbert Broderick, who were on patrol together on the night of the offense and who gave substantially the same testimony. The officers had been briefed on the Elmhurst burglary at roll call that night and had been shown defendant's picture as the suspect in the crime. At 11:30 p.m. the officers, who were patrolling in an unmarked squad car, saw defendant's car at Douglas Boulevard and Central Park in Chicago. The officers pulled alongside of defendant's car as it drove through a lighted intersection and identified the driver as defendant. The officers then attempted to stop defendant's car but defendant sped away. After a few blocks defendant abandoned his car and fled on foot. After being unable to apprehend defendant at that time, the officers returned to defendant's car and recovered two T.V.'s, three coats, a video recorder and two stereo speakers. The victim later identified these items as having been taken from her apartment.

Defendant's main witness was Ann Wynn. Wynn testified that

she saw defendant almost every day during March of 1984 and that he had the same amount of facial hair on March 6 as he did that day in court and as shown in defense exhibit No. 2, a picture of defendant taken on March 15, 1984. Wynn also testified that during March of 1984 she saw defendant regularly drive a 1973 AMC Hornet automobile and did not see defendant drive a 1974 Pontiac during that month. Wynn admitted on cross-examination, however, that she had lived with defendant on a prior occasion and that defendant did own the 1974 Pontiac used to commit the burglary.

The first issue raised is whether the State proved defendant guilty beyond a reasonable doubt. Defendant first argues that the State failed to prove his guilt because several of its witnesses were not credible and its case was "too neatly packaged." Specifically, defendant argues that Officers Staszak's and Broderick's identification of him was not credible because their testimony was too "positive" in light of the fact that they did not make a police report on the incident and that Crawford was not credible because it was just too perfect to believe that he happened to see the offender when he was carrying two stereo speakers to his car. Defendant also argues that the jury should not have believed Kragel's testimony because she is the daughter of an Elmhurst police officer.

■■ Simply stated, defendant questions the credibility of the State's witnesses and the weight to be given to their testimony. It is the jury's province, however, to determine the credibility of the witnesses and the weight to be given to their testimony. (*People v. Carlson* (1980), 79 Ill. 2d 564, 582-83; *People v. Zuniga* (1973), 53 Ill. 2d 550, 559.) It is neither the duty nor the privilege of this court to substitute its judgment for that of the jury's on these issues. (*People v. Nicholls* (1970), 44 Ill. 2d 533, 540.) This court, therefore, cannot reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. In the present case it cannot be said that the evidence was so improbable as to raise a reasonable doubt of guilt.

Next, defendant argues that Officers Staszak's and Broderick's identifications of him are insufficient to support his conviction because they did not satisfy the requirements of *People v. Cullotta* (1965), 32 Ill. 2d 502. In *Cullotta*, the officers had only a fleeting look at a man in a laundromat as they drove by in their patrol car. Further, it was snowing at the time, and the officers had only a profile view of the man except for one instant when the man turned to look at their passing auto. In reversing the defendant's conviction the Illinois Supreme Court stated:

"We have reiterated the rule that a conviction cannot be deemed to be sustained by evidence beyond a reasonable doubt if the identification of the accused was vague, doubtful and uncertain. [Citations.] And where, as here, the identifying witnesses have never before observed the accused, the attendant circumstances, including the opportunity for definite identification, must be carefully weighed and considered. [Citations.]" 32 Ill. 2d 502, 504-05.

■ In the present case, however, the officers were not driving past defendant when they saw him, but were driving alongside of him through a lighted intersection. Further, the officers saw defendant a·second time when he later fled on foot from his automobile. More importantly, unlike *Cullotta*, where the officers had never observed the man before and had no reason to suspect him of a crime at the time they did observe him, Staszak and Broderick had been shown a picture of defendant as a burglary suspect at roll call just 30 minutes before they saw him on the street. The officers' identification in the present case, therefore, was neither vague, doubtful nor uncertain.

■ Defendant also argues that the officers' identification of him does not meet the requirements of *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, and *People v. Manion* (1977), 67 Ill. 2d 564, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513. In both *Brathwaite* and *Manion* the issue was the reliability of an eyewitness' identification of the offender when the initial out-of-court identification procedure had been suggestive. In the present case the officers were not eyewitnesses to the crime and were not asked to identify the offender. Rather, the officers were asked to identify whether the man they saw driving defendant's car that night was the man whose photograph they had been shown earlier at roll call. *Brathwaite* and *Manion*, therefore, are inapplicable.

Defendant further argues that Kragel's identification cannot support his conviction because she gave inconsistent statements on the night of the offense and at trial as to whether the offender was clean-shaven or had a beard and mustache. Defendant relies on *People v. Martin* (1968), 95 Ill. App. 2d 457, and *People v. Marshall* (1966), 74 Ill. App. 2d 483, to support his argument. In both *Martin* and *Marshall*, the court held that where the witness misdescribed the suspect at the time of the offense by five or six inches in height and failed to notice or mention the suspect's mustache, the witness' later identification of the defendant as the offender was discredited

and was insufficient to support a conviction.

In the present case, Kragel's description of the offender on the night of the offense was not inconsistent with her testimony at trial or defendant's actual appearance on the night of the offense. Kragel spoke with Officer Daniel Buenz on the night of the offense and, according to Buenz, stated that she "didn't observe a beard or mustache." Buenz then paraphrased her description and used the term "clean-shaven" in his report. Kragel never described the offender as "having no facial hair and that he was clean-shaven" as defendant claims. Kragel's description of the offender on the night of the offense, that he had no mustache or beard, was not inconsistent with her trial testimony that the offender looked to be clean-shaven with "little hairs down here and stuff," or with the other evidence at trial that defendant had some facial stubble on the night of the offense. Further, Kragel's identification of defendant was strengthened by the fact that the picture of defendant she picked out of the photo lineup on the night of the offense showed defendant with several days' growth of facial hair.

■ The second issue raised is whether the prosecutor's closing remarks contained racial overtones that denied defendant a fair trial. In closing argument, the prosecutor stated in relevant part:

"It's clear from the evidence, ladies and gentlemen, the only inference that can be drawn is this man didn't belong in that area.

You heard the testimony of where he lives. He doesn't live in that area. He lives on the southside of Chicago."

Defendant argues that in the first sentence of the above quotation the prosecutor implied that black people do not belong in Elmhurst and that if they are found there, they must be committing a crime.

The rule is well settled that a prosecutor may comment on facts presented in the record. (*People v. Powell* (1973), 53 Ill. 2d 465.) It is also clear that remarks containing racial overtones and made in an apparent attempt to arouse racial fear and animosity and to malign a defendant who is black amount to a clear attempt to undermine the judicial process. (*People v. Lurry* (1979), 77 Ill. App. 3d 108; *People v. Turner* (1977), 52 Ill. App. 3d 738.) In the present case, the prosecutor did not imply that because defendant was black and present in Elmhurst he must have been committing a crime as defendant argues. The prosecutor simply noted that defendant, without any comment as to defendant's race, did not live in Elmhurst and did not apparently have a valid reason to be in the area of the burglary on the night in question. The prosecutor's remarks, there-

fore, appear to be a proper comment on the facts presented in the record.

■■ The next issue raised is whether the trial court committed reversible error in refusing to submit the second paragraph of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.02 (2d ed. 1981) to the jury. The second paragraph states:

> "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

The second paragraph of IPI Criminal 2d No. 3.02 should be given only when the evidence is entirely circumstantial. (*People v. Evans* (1981), 87 Ill. 2d 77; *People v. Flowers* (1982), 111 Ill. App. 3d 348; *People v. Edmondson* (1982), 106 Ill. App. 3d 716.) Circumstantial evidence is proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common experience. Direct evidence is proof of a fact without the necessity of inference or presumption, or evidence of a fact perceived by means of a witness' senses. (*People v. Stokes* (1981), 95 Ill. App. 3d 62.) However, since distinguishing between the two types of evidence can be difficult (*People v. Stokes* (1981), 95 Ill. App. 3d 62), and the second paragraph is essentially a restatement that the defendant must be proven guilty beyond a reasonable doubt (*People v. Flowers* (1982), 111 Ill. App. 3d 348; *People v. Edmondson* (1982), 106 Ill. App. 3d 716; *People v. Cross* (1981), 100 Ill. App. 3d 83), courts of review are reluctant to find reversible error in the trial court's failure to submit the second paragraph unless the defendant has been denied justice or the verdict resulted from such error.

Defendant argues that since there was no direct evidence as to his presence in the victim's apartment, the second paragraph should have been submitted to the jury. This court has repeatedly held, however, that direct evidence of the commission of the crime is itself sufficient to preclude giving the second paragraph of IPI Criminal 2d No. 3.02. (*People v. Flowers* (1982), 111 Ill. App. 3d 348; *People v. Edmondson* (1982), 106 Ill. App. 3d 716; *People v. Christiansen* (1969), 118 Ill. App. 2d 51.) Applying that rule, the victim's and witnesses' testimony constituted direct evidence of the commission of a burglary.

However, decisions of our supreme court suggest that the instruction's emphasis is directed toward proof of guilt, and that proof of the occurrence of the crime or of the *corpus delicti* is not sufficient direct evidence to excuse giving the second paragraph of the in-

struction. (*People v. Jones* (1985), 105 Ill. 2d 342, 355; *People v. Crow* (1985), 108 Ill. 2d 520, 534-36.) In light of this approach, we must view the evidence as entirely circumstantial, and the full instruction should have been given to the jury.

■ Nevertheless, since the defendant simply argues that the State's witnesses misidentified him and offered no reasonable theory of innocence to explain the evidence adduced at trial, the trial court's failure to give the complete instruction did not deny defendant justice nor can it be said that the verdict resulted from such error. *People v. Merkel* (1974), 23 Ill. App. 3d 298; *People v. Lenker* (1972), 6 Ill. App. 3d 335.

■ The fourth issue raised on appeal is whether the trial court erred in refusing to grant defendant a continuance due to the fact that defendant did not receive the State's supplemental discovery until the day before trial. It is undisputed that defendant's late receipt of the supplemental disclosure was due to administrative misrouting of the disclosure by defense counsel's own office.

Both parties rely on *People v. Jefferson* (1976), 35 Ill. App. 3d 424. In *Jefferson* the court noted that "it is well settled in Illinois *** that the granting of a continuance based upon defense counsel's lack of preparation rests within the trial court's discretion, and the denial of such continuance on that ground will not be disturbed on review unless this discretion has been abused." (35 Ill. App. 3d 424, 426.) The court then went on to state that the determination of whether the trial court abused its discretion "is to be considered in light of the diligence shown on the part of the defendant [citations] as well as the extent such a denial embarrassed the defendant in preparing his defense and prejudiced his rights. [Citations.]" 35 Ill. App. 3d 424, 426.

■ As to the first prong of the *Jefferson* test, defendant argues that the facts and circumstances of this case indicate due diligence on his part. Contrary to his conclusory allegation, however, the record shows that the State's Attorney's office promptly sent the discovery and supplemental discovery disclosures to attorney Ed Ward, the public defender assigned to defendant's courtroom. These disclosures were misrouted in the public defender's office, which caused defense counsel's delay in receiving them. When defendant's trial counsel advised the prosecutor of the problems he was having obtaining the discovery material, the prosecutor advised him on several occasions that the file was open if he wished to come to the State's Attorney's office and pick up an additional copy. Defendant's trial counsel apparently failed to do so until the day before trial.

As to whether the denial of the continuance prevented defendant from preparing his defense and prejudiced his rights, he argues that he should have been afforded time to track down any written reports made by the two new witnesses listed in the State's supplemental discovery. The State's supplemental discovery listed three possible new witnesses and contained a copy of the Chicago police department watch commander's log for March 6, 1984. Only two of the three possible witnesses, Officer Staszak and Officer Broderick, were actually called as witnesses at trial, and Officer Staszak testified that they did not write up a police report on the incident. Therefore, defendant's claim of prejudice also fails.

Defendant further argues that it is "beyond speculation what further investigation and research could have been done by defendant's trial counsel" and that he advised the trial court he "wished to investigate the out-of-court identification evidence." These arguments are not based on defendant's late receipt of the State's supplemental discovery. As the trial court noted, defendant had eight weeks to prepare his case. This included four weeks following the original discovery disclosure, which included the out-of-court identification information.

■ The next issue raised is whether the trial court erred in refusing the jury's request to review the transcript of the testimony of defense witness Ann Wynn. Defendant argues that he was prejudiced in the jury deliberation process because the jury, had they believed Wynn's testimony, would have found him not guilty, and because the jury could have taken the judge's denial of their request as implying that the judge did not believe Wynn's testimony.

The allowance of refusal of a request by the jury for a transcript of testimony in connection with its deliberations is within the sound discretion of the trial court. (*People v. Pierce* (1974), 56 Ill. 2d 361.) In the exercise of its discretion, the trial court is charged with determining whether a review of testimony would be helpful or harmful to the jury's deliberations. (*People v. Bibbs* (1981), 101 Ill. App. 3d 892.) In the present case, Wynn had testified only the day before the jury began deliberations, the trial was not complex with the only seriously contested issue being the identification of the offender, Wynn's testimony itself was not complex, and the jury had begun deliberations, at most, just a few hours before requesting the transcript. Under these facts, it cannot be said that the trial court abused its discretion in denying the jury's request. *People v. Sanders* (1984), 127 Ill. App. 3d 471.

■ The sixth issue raised is the constitutionality of the residen-

tial burglary statute (Ill. Rev. Stat. 1983, ch. 38, par. 19—3). Defendant argues that the statute is unconstitutional on two distinct theories. First, defendant argues that the statute is unconstitutional because there is no distinction between it and the burglary statute (Ill. Rev. Stat. 1983, ch. 38, par. 19—1), and because the residential burglary statute fails to give adequate notice of what conduct is prohibited. Second, defendant argues that the residential burglary statute violates due process of law and the proportionate sentencing concept of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 11), because it requires mandatory sentences while other more severe crimes do not. In a recently filed case, *People v. Bales* (1985), 108 Ill. 2d 182, our supreme court rejected these same arguments. Since *Bales* is controlling, we must reject defendant's constitutional arguments.

■■ The last issue raised on appeal is whether the trial court's sentence of seven years was excessive or constituted a cruel and unusual punishment. Defendant argues that the trial court placed too much emphasis on his prior criminal record as compared to his family situation or his past good conduct, but cites no authority to support his argument. In light of defendant's extensive criminal record (nine convictions, seven incarcerations, one parole violation), it can hardly be said that a prison sentence of seven years for residential burglary is excessive (see *People v. Morton* (1981), 102 Ill. App. 3d 280 (six-year sentence for burglary not excessive); *People v. Davis* (1977), 54 Ill. App. 3d 517 (6⅔- to 20-year sentence for burglary not excessive in light of two prior burglary convictions and parole violation); *People v. Brown* (1969), 118 Ill. App. 2d 41 (12- to 20-year sentence not excessive in light of two robbery convictions and parole violation)), or amounted to cruel and unusual punishment (*People v. Brown* (1975), 29 Ill. App. 3d 269 (10- to 20-year sentence for burglary was within statutory limits and was not cruel and unusual punishment)).

For the reasons stated herein, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HOPF and STROUSE, JJ., concur.