STATE of North Dakota, Plaintiff and Appellee,

v.

James FLYNN, Defendant and Appellant.

Cr. No. 910194.

Supreme Court of North Dakota.

Jan. 9, 1992.

Patricia L. Burke (argued), State's Atty., Bismarck, for plaintiff and appellee.

Deborah J. Carpenter (argued), Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

James Flynn appeals from a criminal judgment entered upon a jury verdict finding him guilty of theft of services. We affirm.

On July 11, 1986, an individual identifying himself as James Flynn checked into the Doublewood Ramada Inn in Bismarck. Over the next several days he wrote numerous checks, totaling $725.10, to the hotel on an account bearing the name James Flynn. The hotel manager became suspicious and telephoned the Texas bank on which the checks were drawn. He was informed that the account had been closed in 1984. The manager then called Flynn in his hotel room, explained there was a problem with the checks, and asked to come down to Flynn's room to discuss it. By the time the manager got to the room, the individual had fled.

A criminal complaint was filed on July 16, 1986, charging Flynn with theft of services in excess of $500, a class C felony. *See* Sections 12.1–23–03 and 12.1–23–05(2)(a), N.D.C.C.[1] Flynn was not arrested until April 1990. Flynn has maintained throughout that he is not the person who wrote the checks. Hotel employees, however, positively identified him as the person

who wrote the checks. Flynn was convicted by a jury and sentenced to 24 months imprisonment, with 12 months suspended. He appeals.

Flynn asserts that the court erred in admitting into evidence certain checks because the State failed to provide copies of the checks in response to Flynn's discovery requests.

Flynn moved under Rule 16, N.D.R.Crim. P., for discovery and inspection of numerous items, including relevant papers or documents within the State's possession.[2] The State filed a response stating that its file was open to the defendant and that all items of evidence were available for inspection at the State's Attorney's office. The State also provided a copy of the entire police report, which contained copies of checks numbered 144–150, totaling $308.50. The report did not include copies of the other checks written by Flynn.

The parties offer conflicting versions of whether Flynn's counsel inspected the remaining checks before trial. The State asserts that Flynn's counsel was specifically shown all of the checks, including the disputed ones, twice before the date of trial and again on the morning of the trial. Flynn's counsel asserts that she did not see the disputed checks until the morning of trial. Flynn did not move for a continu-

---

1. Sections 12.1–23–03 and 12.1–23–05(2)(a), N.D.C.C., provide:
 "*12.1–23–03. Theft of services.* A person is guilty of theft if:
 "1. He intentionally obtains services, known by him to be available only for compensation, by deception, threat, false token, or other means to avoid payment for the services; or
 "2. Having control over the disposition of services of another to which he is not entitled, he knowingly diverts those services to his own benefit or to the benefit of another not entitled thereto.
 "Where compensation for services is ordinarily paid immediately upon their rendition, as in the case of hotels, restaurants, and comparable establishments, absconding without payment or making provision to pay is prima facie evidence that the services were obtained by deception."
 "*12.1–23–05. Grading of theft offenses.*
 \* \* \* \* \* \*
 "2. Theft under this chapter is a class C felony if:

"a. The property or services stolen exceed five hundred dollars in value; ..."

2. Rule 16 provides, in pertinent part:
 "*(a) Disclosure of Evidence by Prosecuting Attorney.*
 "(1) *Information Subject to Disclosure.*
 \* \* \* \* \* \*
 "(C) Documents and Tangible Objects. Upon written request of a defendant, the prosecuting attorney shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, which are within the possession, custody, or control of the prosecution, and which are material to the preparation of the defendant's defense, or are intended for use by the prosecutor as evidence in chief at the trial, or were obtained from or belong to the defendant."

ance to further prepare his case in light of the additional checks, but objected to their admission when they were offered at trial. The trial court, both at trial and in a posttrial motion, found no discovery violation and admitted the checks into evidence. Flynn asserts that the State had a duty under Rule 16 to provide copies of all of the checks and that he was unfairly surprised by the State's belated disclosure of the additional checks.

Rule 16 does not require the State to provide copies of such documents; it only requires that the State make them available for the defendant to inspect and copy. Rule 16(a)(1)(C), N.D.R.Crim.P. Flynn does not assert that he was denied an opportunity to inspect the State's files, or that the checks were not included in the file, but only that the State did not affirmatively provide the copies. The State did not violate Rule 16.

Nor does the record support counsel's assertion that she was surprised by presentation of the checks on the morning of trial. It was clear, from the time the criminal complaint was filed, that the State was alleging theft by checks totaling $725.10. Although the police report included copies of checks numbered 144–150, totaling $308.50, the report further explained:

"All the checks from the 11th–14th were sent in to the Bank. These totalled $416.60. Checks # 144–150 were written out on July 15th by Mr. Flynn totalling $308.50. These Ramada Inn still had. Total amount $725.10."

The police report unambiguously states that only those checks still in possession of the hotel were copied in the police report, and the remaining checks had been sent to the bank for payment. Counsel clearly was on notice of the existence of the checks, and could have specifically asked for copies of the remaining checks or viewed them in the State's file. On this record, there can be no claim of surprise. We conclude that the trial court did not err in finding no discovery violation and in admitting the checks into evidence.[3]

Flynn next asserts that the trial court erred in allowing a police officer to testify regarding use of multiple social security numbers. The defense called Lieutenant Rohrer of the Bismarck Police Department as a witness. On direct examination, Rohrer testified that two payroll check stubs were found in the suspect's hotel room after he absconded, and that each of the check stubs bore a social security number. Rohrer also testified that the number was not Flynn's social security number. On cross-examination, the State asked Rohrer whether he had been involved in other cases where individuals had used more than one social security number, and whether that frequently occurred. Flynn's objection on the basis of relevancy was overruled, and Rohrer testified that it was not unusual for persons to use multiple social security numbers.

Only evidence that is relevant is admissible. Rule 402, N.D.R.Evid. Relevancy is defined in Rule 401, N.D.R.Evid.:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Flynn attempted to show that he was not the person who wrote the checks through evidence that that person had used a different social security number. Flynn thereby opened the door to the State's rebuttal testimony that use of multiple social securi-

---

3. Under similar circumstances, we have upheld admission of intoxilyzer test results even though a discovery violation occurred. *State v. Thomas,* 420 N.W.2d 747 (N.D.1988). In *Thomas,* the defendant asserted that the test results and related documents should have been excluded because the State had failed to produce, in response to Thomas's discovery request, a list of certified chemical test operators, a list of approved devices, the approved method to conduct intoxilyzer tests, a blank intoxilyzer test record form, and a standard solution analytical report. We held that, because the challenged documents were available to the defendant at the clerk of court's office, and because he could have subpoenaed the State Toxicologist and all pertinent records, he had failed to establish that he was prejudiced by the State's failure to comply with the discovery rules. *Thomas, supra,* 420 N.W.2d at 752. We therefore concluded that the court did not err in admitting the documents and test results into evidence.

ty numbers was not uncommon. *See State v. Jensen,* 282 N.W.2d 55, 68 (N.D.1979). Because Flynn had placed the matter in issue, the State's rebuttal evidence was relevant and the trial court did not err in admitting it.

 Flynn asserts that there was not sufficient credible evidence to support the verdict. In an appeal challenging the sufficiency of the evidence, the defendant must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. *State v. Pollack,* 462 N.W.2d 119, 121 (N.D.1990); *State v. Fasching,* 461 N.W.2d 102, 102–103 (N.D.1990). In reviewing the sufficiency of the evidence, we do not resolve conflicts in the evidence or weigh the credibility of witnesses. *Pollack, supra,* 462 N.W.2d at 121; *Fasching, supra,* 461 N.W.2d at 103.

Flynn's challenge to the sufficiency of the evidence is based upon his assertion that the hotel employees who identified Flynn at trial as the person who wrote the checks were not believable, because they had been unable to pick Flynn's picture out of a photographic line-up in 1986. This was clearly a matter that goes to credibility and weight, not to the sufficiency of the evidence. It was for the jury, which heard and viewed the witnesses, to weigh the evidence and assess the credibility of the witnesses. *Pollack, supra,* 462 N.W.2d at 121. We conclude that the evidence was sufficient to sustain the verdict.

The judgment is affirmed.

VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.