STATE of North Dakota, Plaintiff
and Appellee,

v.

Troy Eugene HEINTZE, a/k/a Troy
Eugene Moran, Defendant and
Appellant.

Cr. No. 910225.

Supreme Court of North Dakota.

Feb. 27, 1992.

Constance L. Cleveland (argued), Asst. State's Atty., Fargo, for plaintiff and appellee.

Robert J. Woods (argued), Forest River, for defendant and appellant.

LEVINE, Justice.

Troy Eugene Heintze appeals from a judgment of conviction entered on jury verdicts finding him guilty of one count of theft by "unauthorized conduct" and three counts of theft by deception. We affirm.

Viewed in the light most favorable to the verdicts, the evidence established that during the summer of 1990, Heintze, who was employed as a car salesman, and his girlfriend, Kim Dufault, became interested in purchasing a 1986 Chevrolet Camaro Iroc from Donald Spieker. In late May or early June 1990, Dufault obtained a $7,000 loan from Metropolitan Federal Bank to purchase the Iroc, which served as the collateral for the loan. Although Heintze was not a party to the loan agreement, he assisted Dufault in negotiating for the loan with the Bank loan officer. According to Dufault, "[e]veryone on that particular day regarding that transaction were [sic] fully aware there was a lien on that Iroc." Spieker received a $7,000 check issued by the Bank for the Iroc. Spieker later received $500 to complete the transaction. The Bank took possession of the title to the Iroc.

In June 1990, Heintze traded the Iroc to his half-brother, Lee Moran, Jr., for a 1985 Silverado pickup, a 1983 Suzuki motorcycle, and an Alpine stereo system. According to Moran, it was an "even trade" and no other payments were required to complete the transaction. Moran took possession of the Iroc and Heintze took possession of the pickup, motorcycle, and stereo system. Moran conveyed the title to the pickup to Heintze at that time, but did not give him the title to the motorcycle. According to Moran, Heintze told him that Heintze had the title to the Iroc in his possession but would give it to Moran only after Moran turned over the title to the motorcycle. Heintze did not inform Moran that the Bank had a lien on the Iroc.

Heintze later consigned the pickup to Superior Auto Sales in West Fargo, where he was employed, for sale. The pickup was ultimately sold through Tri State Auction for approximately $5,800. In July 1990, Heintze obtained a $1,000 loan from John Hebert and gave Hebert possession of the motorcycle as collateral for the loan. Heintze also sold the stereo system to a friend. No proceeds from these transactions were applied toward Dufault's car loan with the Bank.

Although Dufault made monthly payments to the Bank on the car loan during the time of these transactions, she stopped making payments in November 1990.

Two months after Moran traded his property to Heintze, Dufault informed Moran that Heintze did not have title to the Iroc

and requested $3,000 from him to complete the transaction. Moran made no payment. In February 1991, the Bank repossessed the Iroc which was in the possession of Moran's father in Manvel.

Heintze's major assertion on appeal is that there was insufficient evidence, circumstantial or otherwise, to convict him on all four of the theft counts.

■ To successfully challenge the sufficiency of the evidence on appeal, a defendant must convince us that the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *State v. Raulston*, 475 N.W.2d 127, 128 (N.D.1991). The tasks of weighing the evidence and judging the credibility of witnesses belong exclusively to the jury, not to this court. *State v. Lovejoy*, 464 N.W.2d 386, 388 (N.D.1990). A verdict based on circumstantial evidence carries with it the same presumption of correctness as other verdicts, and will not be upset on appeal unless it is unwarranted. *State v. Vallely*, 479 N.W.2d 480, 483 (N.D.1992). Although at the trial court level, circumstantial evidence is weighed with the presumption of innocence and must exclude any reasonable inference of innocence, on appeal, we determine only whether there is substantial evidence that reasonably tends to prove guilt and fairly warrants the conviction. *State v. Manhattan*, 453 N.W.2d 758, 759–760 (N.D.1990).

■ Count 1 of the information alleged that Heintze committed theft by "unauthorized conduct" in violation of NDCC §§ 12.1–23–02 and 12.1–23–08 [1] by trading the Iroc for Moran's property when Heintze was aware that the Bank had a lien on the Iroc. Counts 2, 3, and 4 alleged that Heintze committed theft by deception in violation of NDCC §§ 12.1–23–02 and 12.1–23–10 by receiving from Moran the motorcycle, the pickup, and the stereo system in exchange for the Iroc "which he did not own or have license or authorization to sell."

Heintze asserts that under all four counts the State failed to produce any evidence that the transfer of the Iroc was unauthorized or that he knew he was not authorized to transfer the Iroc without the Bank's consent. We disagree.

The testimony established that Heintze had been employed as a car salesman for several years at the time of the trade with Moran. This fact permits a reasonable inference that Heintze must have been somewhat familiar with the customary legal and contractual requirements for transferring ownership of vehicles. There is no dispute that Heintze assisted Dufault in negotiations with the Bank loan officer. Dufault testified that everyone involved in the transaction was "fully aware" that the Bank had a lien on the Iroc. Moran also testified that when he traded his property for the Iroc, Heintze falsely informed him that he had the title to the Iroc in his possession but would not transfer it to him until he received the title to the motorcycle. This constitutes substantial evidence to establish not only that Heintze was not au-

---

**1.** NDCC § 12.1–23–02(1) provides:

*"12.1–23–02. Theft of property.* A person is guilty of theft if he:

"1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof; ..."

NDCC § 12.1–23–08 provides in pertinent part:

*"12.1–23–08. Defrauding secured creditors.*

\* \* \* \* \* \*

"2. A person may not destroy, remove, damage, conceal, encumber, transfer, or otherwise deal with property that is subject to a security interest with the intent to prevent collection of the debt represented by the security interest.

"3. A person may not, at the time of sale of property that is subject to a security interest, or is described in a certificate provided for under section 41–09–28, make false statements as to the existence of security interests in the property, or as to the ownership or location of the property.

"4. A violation of subsection 2 or 3 must be prosecuted as theft under section 12.1–23–02 or 12.1–23–04. Violation of subsection 2 or 3 is a class C felony if the property has a value of more than five hundred dollars, as determined under subsection 6 of section 12.1–23–05. In all other cases, violation of this section is a class A misdemeanor."

thorized to transfer the vehicle without the Bank's consent, but also that he had knowledge that he was not authorized to do so.

▮ Heintze also asserts that the State failed to prove under count 1 that he intended to deprive the Bank of its property. However, there is no dispute that the proceeds ultimately received by Heintze from the trade of the Iroc were not applied to the car loan. A refusal to apply proceeds from the sale of secured property demonstrates an intent to prevent the collection of a debt represented by a security interest in violation of NDCC § 12.1–23–08. *State v. Patten*, 353 N.W.2d 26, 28 (N.D.1984). That Dufault made a few loan payments to the Bank after Heintze traded the Iroc was for the jury to weigh and consider in resolving this question. Moreover, Moran testified that Heintze said he had title to the Iroc. *See* NDCC 12.1–23–08(3). We conclude that there was substantial evidence to support Heintze's conviction under count 1.

▮ Heintze asserts that there was insufficient proof of deception and intent to deprive Moran of the motorcycle and the pickup to support convictions under counts 2 and 3. We disagree. "Deception" is defined as either "[c]reating or reinforcing a false impression, including false impressions as to fact, law, status, value, intention ..." or "[f]ailing to disclose a lien, adverse claim, or other impediment to the enjoyment of property which he transfers or encumbers in consideration for the property obtained...." NDCC 12.1–23–10(2)(a) and (e). Moran testified that Heintze did not tell him that the Bank had a lien on the Iroc and that Heintze told him that Heintze in fact had the title to the vehicle. This constitutes substantial evidence of deception. Moreover, no proceeds from the disposition of the motorcycle or pickup were applied to the Bank loan. We conclude that there was substantial evidence of intent to deprive Moran of his property.

▮ Heintze contends that there was no competent evidence to establish the value of the stereo system to sustain his conviction under count 4 because the only evidence of value was presented by Moran.

Moran testified that the value of a new Alpine stereo system was approximately $800. At one point, Moran testified that the current value of the system was "about" $500. He later admitted that it could be worth only $400. The jury convicted Heintze on count 4, but separately found that the value of the stereo system did not exceed $500. Heintze was accordingly sentenced under count 4 for class A misdemeanor theft. *See* NDCC § 12.1–23–05(3). We reject Heintze's contention that Moran's vacillation over the value of the stereo system somehow constitutes a failure on the part of the State to prove that the stereo system had any value whatsoever. Even disregarding Moran's testimony, it is undisputed that Heintze sold the stereo system to a friend. This fact in itself allowed the jury to infer that the stereo system at least had some value. *See, e.g.,* 52A C.J.S. *Larceny* § 133, at p. 662 (1968). The evidence was sufficient to support Heintze's conviction for class A misdemeanor theft.

▮ Heintze also asserts that the trial court committed reversible error by failing to define the term "knowingly" to the jury. Heintze neither requested such an instruction nor objected to its absence. Under these circumstances, our inquiry is limited to determining whether the alleged error constitutes obvious error affecting substantial rights of the defendant under NDRCrimP 52(b). *State v. Potter*, 452 N.W.2d 71, 72 (N.D.1990). Our power to notice obvious error is exercised cautiously and only in exceptional situations where the defendant has suffered serious injustice. *State v. Smuda*, 419 N.W.2d 166, 168 (N.D.1988).

▮ We do not believe the trial court's failure to define the word "knowingly" rises to the level of obvious error. It has often been held that the word "knowingly" as used in instructions on the elements of an offense is a word of common usage and is therefore within the ordinary understanding of a juror. *See, e.g., United States v. Williams*, 923 F.2d 76, 78 (8th Cir.), *cert. denied,* —— U.S. ——, 112

S.Ct. 131, 116 L.Ed.2d 98 (1991); *United States v. Chambers*, 918 F.2d 1455, 1460 (9th Cir.1990); *United States v. Smith*, 635 F.2d 716, 720 (8th Cir.1980); *United States v. Brown*, 482 F.2d 1226, 1229 (8th Cir. 1973). Absent a request, a trial court is under no obligation to define words within the ordinary understanding of the jury. *Smith, supra; see also State v. Johnson*, 379 N.W.2d 291, 293 (N.D.) [failure to define "object" did not constitute obvious error], *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1792, 90 L.Ed.2d 337 (1986).

We have considered Heintze's other arguments and find them wholly unpersuasive. Accordingly, the judgment of conviction is affirmed.

ERICKSTAD, C.J., VANDE WALLE and MESCHKE, JJ., and DONALD L. JORGENSEN, District Judge, concur.

DONALD L. JORGENSEN, District Judge, sitting due to the resignation of the Honorable H.F. GIERKE III.