STATE of North Dakota, Plaintiff and Appellee,

v.

Thomas SCHNEIDER, Defendant and Appellant.

Crim. No. 1143.

Supreme Court of North Dakota.

June 19, 1986.

James O. Johnson, Asst. State's Atty., Stanton, for plaintiff and appellee.

Gregory L. Lange, of Richardson, Blaisdell, Isakson & Lange, Hazen, for defendant and appellant.

VANDE WALLE, Justice.

Thomas Schneider appealed from the judgment of conviction by the county court of Mercer County for possession of a controlled substance. Schneider argues that the evidence should not have been admitted because it was obtained by an improper search and seizure and that the trial court erred in receiving an uncertified copy of the State Laboratories' report determining the nature of the substance. We affirm.

On April 30, 1985, Rodney C. Sagen, a Beulah police officer, stopped Schneider for speeding. Sagen asked Schneider to sit in the front passenger's seat of the police car for the purpose of giving him a ticket. While issuing the ticket Sagen noticed a bulge under Schneider's leather coat that appeared to be a revolver in a shoulder holster.

Following issuance of the citation for speeding, Sagen asked Schneider to step in front of the police car on the pretext of checking his motorcycle registration. When they reached the front of the vehicle, Sagen conducted a pat-down search by placing his hand on the outside of Schneider's coat, and, feeling a "solid lump," opened the jacket and found a heavy-duty freezer bag containing 27.48 grams of marijuana. Sagen arrested Schneider for possession of marijuana.

■ Schneider moved to suppress the marijuana, claiming that the evidence was obtained by an illegal search that violated Schneider's Fourth Amendment rights, applied to the States through the Fourteenth Amendment of the United States Constitution. The lower court denied the motion, applying the case of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and holding that because Sagen was convinced that Schneider had a gun in a shoulder harness and surmised a dangerous situation, the search was reasonable and therefore did not violate Schneider's constitutional rights.

We observe at the outset that "[a] trial court's denial of a suppression motion will be reversed if, after resolving conflicts in the testimony in favor of an affirmance, there is insufficient competent evidence fairly capable of supporting the trial court's determination." *State v. Placek*, 386 N.W.2d 36, 37 (N.D.1986). According to *Terry*, a police officer may conduct a stop and frisk of an individual under certain well-delineated situations:

"[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be *armed and presently dangerous*, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 U.S. at 30, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911. [Emphasis added.]

There is no question as to Sagen's justification to stop Schneider for speeding and the evidence clearly supports the trial court's conclusion that there was an articulable and reasonable basis for Sagen's suspecting that Schneider was armed. The harder question is whether there was sufficient basis to conclude that Schneider was "presently dangerous."

Sagen testified that he believed that there might have been danger because

"felons don't carry handguns underneath their coats. There would be no reason for him to carry a handgun underneath his coat other than to protect himself or to fire it at something. At that time of night you don't hunt, there is no reasonable reason to have a handgun underneath your coat that time of night to protect yourself against something."

In addition, Sagen stated that he was not threatened by Schneider in any way and that Schneider followed directions, such as his direction to be seated in the police car. Sagen also stated that he was aware of Schneider's previous conviction as a felon for possession of drugs.

Schneider argues that the State failed to demonstrate that Sagen held a reasonable belief that Schneider was presently armed *and* dangerous. In support of this proposition, Schneider refers to several indications on the record by Sagen that, because of his prior knowledge of Schneider and his reputation in the community, he perceived a danger merely because of the reasonable belief that Schneider was armed. We have carefully reviewed the entire record and believe that Sagen's other testimony provides sufficient support for the trial court's conclusion that the stop-and-frisk exception applied. See, e.g., 1 W. LaFave & J. Israel, *Criminal Procedure* 307 (1984) ["a mere bulge in a pedestrian's pocket, insufficient to justify a stopping for investigation, would not be a basis for a frisk by a passing officer, though quite clearly the same bulge would entitle the officer to frisk a person he had already lawfully stopped for investigation"], citing *People v. Batino*, 48 A.D.2d 619, 367 N.Y.S.2d 784 (1975), and *People v. Allen*, 50 Cal.App.3d 896, 123 Cal.Rptr. 80 (1975).

■ Schneider's final argument is that the lower court erred in admitting an uncertified copy of a State Laboratories' re-

port determining the nature of the substance taken from Schneider by the search. Both sides agree that because of the lack of certification, Section 19–03.1–37(4), N.D. C.C., does not require admission of the report. Although the preferable method of providing adequate foundation in this type of case is to comply with the requirements of Section 19–03.1–37(4), that rule of admissibility is independent of our Rules of Evidence and is perforce not exclusive. See, e.g., *State v. Vetsch*, 368 N.W.2d 547 (N.D. 1985).

As we stated in *Ned Nastrom Mot. v. Nastrom-Peterson-Neubauer*, 338 N.W.2d 64, 66 (N.D.1983), "whether or not an exhibit should have been excluded on the basis that it lacked adequate foundation is primarily within the sound discretion of the trial court, ..." According to Rule 901(a), N.D.R.Ev., the requirement of authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Prior to admitting the document under this rule, the lower court received evidence from an officer who stated that she delivered the substance to the State Laboratories, from an officer who stated that he received the copy of the report (ostensibly from the State Laboratories) by mail, and from an officer who stated that he obtained the substance back from the State Laboratories following testing. The State Laboratories letterhead is contained at the top of the copy, and the report is signed by a State chemist who apparently conducted the testing. Under these circumstances, we cannot say that the trial court abused its discretion in concluding that the document is a report from the State Laboratories (albeit without certification) and admitting the document. See, e.g., *Farmers Union Oil Co. of Dickinson v. Wood*, 301 N.W.2d 129 (N.D.1980).

The judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.