**STATE of North Dakota, Plaintiff and Appellee,**

v.

**James Leigh THOMAS, Defendant and Appellant.**

**Crim. No. 870119.**

Supreme Court of North Dakota.

March 9, 1988.

Ackre & Baer Chartered, Cando, for defendant and appellant; argued by Larry M. Baer.

J. Bruce Gibbens, Asst. State's Atty. (argued), Cando, for plaintiff and appellee. Appearance by Lisa Beckstrom Gibbens, State's Atty.

GIERKE, Justice.

This is an appeal by James Thomas (Thomas) from a conviction of being in physical control of a motor vehicle while under the influence of intoxicating liquor or with a breath alcohol content of 0.10% by weight or greater in violation of Section 39–08–01, N.D.C.C. Thomas also appeals from the trial court's order denying in part his pretrial motion to suppress evidence. We affirm.

On January 3, 1987, Thomas was at home nursing a sore throat and cough. While at home, Thomas consumed multiple doses of cough syrup which, unknown to Thomas, contained 5% alcohol by volume. Later that evening Thomas began feeling better and went uptown to see what his friends were doing. Thomas discovered that most of his friends were attending a party at a rural farm home. Thomas and two friends decided to drive to the farmstead where the party was being held. They arrived at the party sometime between 11:30 p.m. and midnight.

When Thomas arrived at the party, he was given a six-pack of 12 oz. cans of beer. During the party, Thomas consumed five of the six cans of beer and gave away the last can of beer to somebody at the party. In fact, Thomas stated that he drank the fifth can of beer quickly just before leaving the party. Thomas left the party at approximately 1:00 a.m. Thomas stated that at the time he left the party he did not feel the effects of the alcohol he had consumed.

However, while driving home, Thomas began to feel the effects of the alcohol and decided that he should pull off the road for a while. Thomas came upon a private gun club of which he was a member and drove into its parking lot. After parking near the clubhouse, Thomas turned off the engine of his automobile and sat and talked with his two passengers.

At approximately 2:40 a.m., Officer Seeklander observed a vehicle in the gun club parking lot and stopped to investigate. Officer Seeklander approached the vehicle and recognized Thomas who was in the driver's seat. Officer Seeklander noticed that Thomas had a very strong odor of alcohol on his breath and that his eyes were extremely bloodshot. After observing the odor of alcohol and the bloodshot eyes, Officer Seeklander concluded that Thomas had been drinking and suspected that Thomas was under the influence of alcohol. Accordingly, Officer Seeklander asked Thomas to exit his vehicle and to be seated in the patrol car.

While in the patrol car, Officer Seeklander had Thomas perform an alert test and an eye gaze test both of which Thomas failed. In addition, Officer Seeklander asked Thomas whether or not he had been drinking. Thomas stated that he had consumed five beers.

Then, Officer Seeklander asked Thomas to step out of the patrol car and perform certain physical tests which included a walk and turn test, a one leg stand test, and a finger-to-nose test. Before each test, Officer Seeklander described the test and then demonstrated how the test was to be performed. Thomas attempted each of the requested maneuvers but failed to correctly perform each of the three tests.

Thomas was then transported to the Towner County Sheriff's Office and was placed under arrest for actual physical control of a motor vehicle while under the influence of alcohol. At approximately 3:19 a.m., Thomas was given an intoxilyzer test. The results of the intoxilyzer test showed that Thomas had a blood alcohol concentration of 0.11%.

On January 26, 1987, Thomas filed a motion to dismiss the charge of actual physical control on the basis that the offense did not occur while Thomas was upon an area to which the public has a right of access for vehicle use. The trial court denied Thomas' motion to dismiss on February 12, 1987.

On February 10, 1987, Thomas filed a motion to suppress all physical tests and chemical test observations or results on the ground that he was deprived of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Art. 1, Sections 13 and 18 of the North Dakota Constitution. The trial court granted in part and denied in part Thomas' motion to suppress. The trial court ordered that all oral statements made by Thomas in response to custodial interrogation be suppressed. Further, the trial court ordered that all physical tests and chemical tests taken subsequent to the time of the custodial interrogation not be suppressed.

On April 29, 1987, a jury trial was held. The jury returned a verdict finding Thomas guilty of being in actual physical control of a motor vehicle while under the influence of intoxicating liquor or with a blood alcohol concentration greater than 0.10% in violation of Section 39–08–01 of the North Dakota Century Code. On April 29, 1987, a judgment of conviction was entered. This appeal followed.

Thomas raises four issues on appeal. Initially, Thomas asserts that all physical and chemical tests conducted subsequent to the custodial interrogation should have been suppressed. Next, Thomas asserts that the field sobriety tests should have been excluded because they were not shown to be fairly administered. Also, Thomas asserts that the blood alcohol content test results should have been excluded. Finally, Thomas contends that he was not in control of a vehicle in an area to which the public had a right of access for vehicular use.

Thomas contends that all physical and chemical tests conducted subsequent to the custodial interrogation should be suppressed. Thomas argues that the field sobriety tests should be suppressed under the "fruit of the poisonous tree" doctrine.[1] In addition, Thomas argues that the arrest was illegal and therefore the intoxilyzer test results should be excluded. Thus, Thomas argues that everything done subsequent to the interrogation is inadmissible in a criminal prosecution.

The "fruit of the poisonous tree" doctrine enjoins the State from benefiting from any evidence located as a result of information obtained illegally. *Harrison v. United States*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *see also* C. Whitebread, *Constitutional Criminal Procedure* § 12.20 (1978) (the "fruit of the poisonous tree" doctrine applies to evidence derived from unlawfully obtained statements); 1 W. LaFave & J. Israel, *Criminal Procedure* § 9.5(b) (1984) (fruits of illegally obtained confessions). Thus, the "fruit of the poisonous tree" doctrine requires the exclusion of any evidence discovered as a consequence of a defendant's illegally obtained confession.

In the instant case, we do not believe that any evidence was located as a result of the statement made by Thomas. Officer Seeklander's observation that Thomas had a strong odor of alcohol on his breath and extremely bloodshot eyes provided a basis to request Thomas to perform

---

1. We note that this Court, in *Borman v. Tschida*, 171 N.W.2d 757, 764 (N.D.1969), implied that no *Miranda* warning is necessary prior to field sobriety tests. In *City of Wahpeton v. Skoog*, 300 N.W.2d 243, 245 (N.D.1980), we affirmatively accepted what was implied in *Borman v. Tschida supra*, and stated that field sobriety tests are physical and real evidence and are not protected by the Fifth Amendment privilege against self-incrimination.

the field sobriety tests. Also, after Thomas failed the field sobriety tests Officer Seeklander had sufficient probable cause to place Thomas under arrest and to request that he submit to an intoxilyzer test.

Accordingly, we believe that the field sobriety tests were not fruits of the illegally obtained statement and therefore were admissible. Also, we believe that the intoxilyzer test results were admissible since the arrest was not based on illegally obtained evidence.

■ Thomas' next contention is that the field sobriety tests were not "fairly administered" and therefore they should have been excluded.

We note that Thomas failed to cite any statutory authority or case law which requires that it be proven that field sobriety tests were "fairly administered" before such tests could be admitted into evidence.

At trial, Thomas testified that his inability to perform the field sobriety tests was due to the poor lighting, the compacted snow, the cold and windy weather, his weight handicap and his physical handicap.[2]

Officer Seeklander testified that the lighting, the footing and the weather conditions were adequate. Also, Officer Seeklander testified that he did not observe any physical handicaps and that he believed Thomas' weight would not interfere with his performance of the field sobriety tests.

We believe that these factors which Thomas believes may have affected his performance of the field sobriety tests go to the weight of the evidence rather than its admissibility. Accordingly, we conclude that the field sobriety tests were properly admitted by the trial court.

■ Thomas' next contention is that the intoxilyzer test results should have been excluded. Thomas argues that the intoxilyzer test results should be excluded because consumption of cough syrup containing alcohol between the time of the stop

and the time of the breath test causes the test to be unreliable. Also, Thomas argues that the results of the intoxilyzer test should be excluded because the State failed to disclose several documents prior to trial.

In *City of Bismarck v. Preston*, 374 N.W.2d 602, 603–604 (N.D.1985), this Court stated that an alcohol breath test cannot be admitted into evidence unless it is properly obtained, fairly administered and administered according to methods approved by the State Toxicologist by an individual certified to administer the test. Also, in *City of Bismarck v. Preston, supra* at 604, we disagreed with the defendant's contention that the test was not "fairly administered" because of the consumption of alcohol between the time of accident and the administration of the test. Accordingly, in *City of Bismarck v. Preston, supra,* we held that the trial court's admission of the alcohol breath test into evidence was proper.

We note that at trial Thomas was unsure whether or not he consumed any cough syrup between the time of the stop and the time of the breath test. Nevertheless, we believe that such evidence does not go to the admissibility of the test results but instead may be considered by the jury in rebuttal.

■ Next, we note that, pursuant to Rule 16, N.D.R.Crim.P., counsel for Thomas requested the State to furnish and disclose any information or documents relating to inspection, maintenance or operation of any mechanical or chemical testing instrument used in the instant case. At trial, the prosecution offered into evidence the following documents which were objected to by counsel for Thomas: a list of certified chemical test operators; a list of approved chemical testing devices; the approved method to conduct a breath test with an intoxilyzer; a blank intoxilyzer test record form; and a standard solution analytical report. Counsel for Thomas objected to the admission into evidence of these doc-

**2.** Officer Seeklander testified that a person's performance of the field sobriety tests may be affected by factors such as age, weight and physical handicaps. Thomas testified that he has a weight handicap since he is approximately

5 foot 9 inches tall and weighs 245 pounds. In addition, Thomas testified that he has a weak left ankle as a result of an injury suffered in a motorcycle accident.

uments on the grounds that the State failed to produce these documents in accordance with Thomas' request for discovery.

Subdivision (d)(2) of Rule 16 of the North Dakota Rules of Criminal Procedure contains sanctions for failure to comply with requests for discovery or inspection. If it is brought to the attention of the court that a party has failed to comply with Rule 16 or with an order issued pursuant to the Rule then the court may order the delinquent party to permit discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the delinquent party from introducing evidentiary material not disclosed, relieve the party from making a disclosure required by this rule, or enter any other order it deems just under the circumstances. Rule 16(d)(2), N.D.R.Crim.P.

In *United States v. Sarcinelli*, 667 F.2d 5 (5th Cir.1982), the trial court, pursuant to Rule 16(d)(2), Fed.R.Crim.P.,[3] suppressed the evidence for the prosecutor's failure to comply with a discovery order. The Court of Appeals reversed the trial court's order suppressing the evidence and stated that the trial court should impose the least severe sanction that will rectify the prejudice, if any, to the opposing party. *United States v. Sarcinelli, supra* at 7.

In *United States v. Kubiak*, 704 F.2d 1545, 1551–1552 (11th Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983), counsel for the defense asserted that testimony of a government chemist should have been stricken as a discovery sanction because the government's untimely disclosure denied him his right to effectively challenge the report or pursue further discovery concerning the evidence. The Court of Appeals noted that:

"[T]he only step taken by the defense to relieve itself from the predicament it now complains of, was its request that the chemist's testimony be stricken from the record. The defense never asked for a recess, let alone a continuance, to give it an opportunity to review the report....

The defense simply acquiesced in the continuation of the trial. (Citations omitted). To put it simply, the prejudice now complained of by the appellant 'could perfectly well have been ratified [sic] by a recess. Absent such a request the court cannot be faulted for having denied the request to preclude the [g]overnment from alluding to the [report] in question.' (Citation omitted). Although we don't condone the government's actions, we hold that in the particular circumstances of this case, the government's failure to comply with the discovery rules until the time of trial does not amount to reversible error." *United States v. Kubiak, supra* at 1552.

Thus, the Court of Appeals in *United States v. Kubiak, supra,* determined that the failure of the prosecution to provide the defense with a copy of a lab report prior to trial did not compel the trial court to exclude the testimony of the chemist.

We note that a majority of the documents which were not timely disclosed by the State were available to Thomas in the Towner County clerk of court office. *See* Section 39–20–07(6), N.D.C.C. Also, in *State v. Martin*, 391 N.W.2d 611, 614 (N.D. 1986), we noted that when a defendant could have subpoenaed the State Toxicologist and all pertinent records, without cost to him, and did not do so, the defendant is not in a strong position to assert that he has been prejudiced by the State's failure to produce such records. *See also* Section 39–20–07(9), N.D.C.C.

Under the circumstances of this case, we do not believe that Thomas was prejudiced by the State's failure to comply with the discovery rules. Accordingly, we believe that the results of the intoxilyzer test should not be excluded.

Thomas' final contention is that the parking lot of the private gun club was not an area to which the public had a right of access for vehicular use. Thomas argues that Section 39–08–01(2) of the North Dakota Century Code does not apply to a vehicle

---

**3.** Rule 16(d)(2) of the Federal Rules of Criminal Procedure is identical to Rule 16(d)(2) of the North Dakota Rules of Criminal Procedure.

located in a parking lot of a private gun club.

■ At the time of the offense, Section 39–08–01 provided in part as follows:

"39–08–01. Persons under the influence of intoxicating liquor or controlled substances not to operate vehicle—Penalty.

"1. A person may not drive any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

\* \* \* \* \* \*

"2. A person may not be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:"

Thus, at the time of the offense driving under the influence was prohibited by Section 39–08–01(1), while being in actual physical control of a motor vehicle while under the influence was prohibited by Section 39–08–01(2).

In *State v. Novak*, 338 N.W.2d 637 (N.D. 1983), we held that a person could be convicted of being in actual physical control of a motor vehicle while under the influence of alcohol even though he was parked on the edge of a private field.

Thomas contends that *State v. Novak, supra*, is not applicable because it was decided by this Court when the offenses of driving under the influence and being in actual physical control were both set forth

in Section 39–08–01(1)[4] and because this Court relied on the statutory construction of Section 39–10–01(2) to extend the scope of Section 39–08–01 to private property adjacent to a highway.

Even though in 1983 the Legislature amended Section 39–08–01 in such a manner that the offenses of driving under the influence and being in actual physical control were separated into different subsections, we believe that the Legislature did not intend to alter the law or overrule *State v. Novak.*[5] Accordingly, we believe that *State v. Novak, supra*, is applicable to the facts of the present case.

■ In *State v. Novak, supra* at 639, we quoted the following material from *State v. Ghylin*, 250 N.W.2d 252 (N.D.1977), which explains the purpose of Section 39–08–01:

" '... the real purpose of the statute is to deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers. As stated in *State v. Schuler* [243 N.W.2d 367 (N.D.1976) ], *supra*, the 'actual physical control' offense is a preventive measure intended to deter the drunken driver. One who has been drinking intoxicating liquor should not be encouraged to test his driving ability on the highway, even for a short distance, where his life and the lives of others hang in the balance.' *Id.* at 255."

Also, in *State v. Novak, supra* at 640, we stated that to not make the prohibition of Section 39–08–01 applicable to highways and other areas would defeat the purpose of the statute which seeks to protect the

---

4. When *State v. Novak*, 338 N.W.2d 637 (N.D. 1983), was decided, Section 39–08–01, N.D.C.C., provided in part as follows:

"39–08–01. Persons under the influence of intoxicating liquor or controlled substances not to operate vehicle—Penalty.

"1. No person shall drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if:"

5. We note that the principles of statutory construction do not prevent a court from looking to subsequent amendments and enactments as an aid in arriving at the correct interpretation of a prior statute. *State v. Eddy Furniture Co.,* 386

N.W.2d 901, 904 n. 4 (N.D.1986); *North Dakota Public Serv. v. Valley Farmers*, 365 N.W.2d 528, 546–547 (N.D.1985); *State v. Novak*, 338 N.W.2d 637, 640 (N.D.1983). Furthermore, we note that the 1987 Legislative Assembly amended and reenacted Section 39–08–01 to read in part as follows:

"39–08–01. Persons under the influence of intoxicating liquor or any other drugs or substances not to operate vehicle—Penalty.

"1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:"

public against the real danger caused by drunken drivers whether on the highway, a parking lot or elsewhere within the State.

In the instant case, Thomas parked his vehicle in the parking lot of a private gun club. Thomas argues that the gun club was open to members and guests of members and therefore the parking lot of the gun club is only open to members and guests of members and not the general public. Thus, Thomas argues that the parking lot is not an area to which the public had a right of access for vehicular use. We disagree.

Initially, we note that there was testimony at trial to the effect that a portion of the gun club parking lot is used by the public as an access route to the public plinking range.[6] Also, we do not believe that access to the parking lot is automatically restricted because it serves a members only establishment.

Accordingly, we conclude that the parking lot was an area to which the public had a right of access for vehicular use.

For the reasons stated in this opinion, the conviction is affirmed.

LEVINE, Acting C.J., VANDE WALLE and MESCHKE, JJ., and SCHMALENBERGER, District Judge, concur.

SCHMALENBERGER, District Judge, sitting in place of ERICKSTAD, C.J., disqualified.

---

**6.** A plinking range is a place where a person can go to shoot at bottles, cans or similar targets.