STATE of North Dakota, Plaintiff
and Appellee,

v.

Joseph Robert ZIMMERMAN,
Defendant and Appellant.

Cr. No. 930323.

Supreme Court of North Dakota.

May 19, 1994.

Rick L. Volk (argued), Asst. State's Atty., Bismarck, for plaintiff and appellee.

Vinje Law Firm, Bismarck, for defendant and appellant, argued by Ralph A. Vinje.

MESCHKE, Justice.

Joseph Zimmerman appeals from a conviction for driving under the influence of alcohol. We affirm.

Shortly after midnight on March 18, 1993, Burleigh County Deputy Sheriff John Schaffer observed a car driven by Zimmerman coming towards him on the shoulder of the road. Deputy Schaffer turned around and stopped the car after it crossed the fogline four more times. Schaffer administered field sobriety tests and arrested Zimmerman for DUI. Zimmerman consented to a blood test, and the results admitted at trial showed a 0.14% blood-alcohol content. A jury convicted Zimmerman of DUI and he appeals.

Zimmerman argues that Schaffer lacked probable cause to stop his vehicle. He also argues that the trial court erroneously admitted the report of his blood-alcohol test into evidence without a proper evidentiary foundation. We conclude that the trial court properly admitted the results of Zimmerman's blood test, and we affirm.

■ "An officer must have a reasonable and articulable suspicion to make an investigative stop." *State v. Langseth*, 514 N.W.2d 380, 381 (N.D.1994); *State v. Miller*, 510 N.W.2d 638, 640 (N.D.1994). Zimmerman argues that an investigative stop of a vehicle for any reason other than those listed in NDCC 29–29–21 requires probable cause. NDCC 29–29–21 does not include DUI among the offenses where a temporary stop for questioning is authorized upon reasonable suspicion and less than probable cause. For that reason, Zimmerman assumes that he was improperly stopped. We recently rejected this argument in *City of Bismarck v. Uhden*, 513 N.W.2d 373 (N.D.1994), and Zimmerman does not dispute on appeal that

Deputy Schaffer reasonably suspected he was driving under the influence of alcohol. Therefore, Zimmerman was properly stopped.

Zimmerman also claims that the analytical report of his blood test was erroneously admitted into evidence. He argues that the foundational documents for the results were not disclosed by the prosecution as required in NDREv 803(8) and NDRCrimP 16. Copies of the toxicologist's approved method to conduct blood analysis, the list of approved devices, and the list of certified operators were not furnished to Zimmerman or made available to him in the prosecution's open file until shortly before trial. As a remedy for the prosecution's failure to timely disclose these records, Zimmerman argues "at a minimum the [trial] Court should have offered a continuance for purposes of receiving the discovery not finished, and, preferably, denied the State the entry into evidence of testing results."

■ The prosecution must disclose to the defendant its copies of these official records and the analytical report of the defendant's blood sample, if it intends to use the documents at trial. NDRCrimP 16(a)(1)(C); [1] *State v. Thomas*, 420 N.W.2d 747, 752 (N.D.1988). NDRCrimP 16(c) imposed a continuing duty on the prosecution to supplement its response to Zimmerman's discovery request. The prosecution does not have to furnish these documents to the defendant as long as they are available for inspection. *State v. Flynn*, 479 N.W.2d 477, 479 (N.D.1992). However, Zimmerman argues that the prosecution was under an additional discovery obligation to furnish these hearsay documents to him before trial because they were admitted into evidence under NDREv 803(8)(iii).[2] *See Ertelt v. North*

---

1. NDRCrimP 16(a)(1)(C) directs:

 Upon written request of a defendant, the prosecuting attorney shall permit the defendant to inspect and copy or photograph . . . documents . . . which are within the possession, custody, or control of the prosecution, and which are . . . intended for use by the prosecutor as evidence in chief at the trial. . . .

2. NDREv 803 says:

 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

 *(8) Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (iii) in civil actions and proceedings and against the State in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law. . . . However, factual findings may not be admitted

*Dakota Dep't of Transp.*, 491 N.W.2d 736 (N.D.1992). We disagree. .

■ Because the prosecution introduced these records to prove the truth of their contents, the records were hearsay as defined in NDREv 801(c). "Hearsay is not admissible except as provided by these rules ... *or by statute.*" NDREv 802 (emphasis added); *see also* NDRCrimP 26; NDRCivP 43(a). NDCC 39–20–07(7) authorizes the admission of these official records in lieu of the state toxicologist's testimony describing the methods, devices, and operators that he has approved under NDCC 39–20–07(5). *State v. Jordheim*, 508 N.W.2d 878, 881 (N.D.1993). We have held that similar statutes allowing the use of documents instead of testimony are express statutory exceptions to the hearsay rule. *See In the Interest of K.E.N.*, 513 N.W.2d 892, 895 (N.D.1994) (paternity test reports under NDCC 14–17–11(3)); *State v. Fischer*, 459 N.W.2d 818, 820 (N.D.1990) (drug test reports under NDCC 19–03.1–37). For the same reason, NDCC 39–20–07(7), (8), and (10) are also statutory exceptions to the hearsay rule. Therefore, copies of these official records, the analytical report, and the operational checklist did not have to be furnished to Zimmerman before trial because they were properly admitted under NDCC 39–20–07 instead of NDREv 803(8).[3]

■ Zimmerman claims that the prosecution violated NDRCrimP 16(a)(1)(C) by not making the records available to him before trial. Like other exceptions to the rule against hearsay, NDCC 39–20–07(7) does not remove the prosecution's discovery obligations. Undisclosed admissible evidence can be excluded at trial if the prosecution violates the discovery rules. NDRCrimP 16(d)(2); *State v. Lince*, 490 N.W.2d 476, 478 (N.D.1992). We disagree with the prosecution's claim that it substantially complied with Rule 16 by the references in the analytical report disclosed to Zimmerman identifying the chemist, instrument, and method employed in the test. However, Zimmerman did not show any prejudice from the prosecution's failure to comply with his discovery request. He argues that the trial court should have "offered a continuance," but he did not request one. As we determined in *Thomas*, 420 N.W.2d at 752, if the defendant was not prejudiced by the prosecution's failure to disclose these documents, the trial court did not abuse its discretion by admitting the evidence.

■ As a sanction for institutional noncompliance and systematic disregard of the law, we may reverse a trial court's decision to admit evidence. *Madison v. North Dakota Dep't of Transp.*, 503 N.W.2d 243 (N.D. 1993). Although we said in *Thomas*, 420 N.W.2d at 752, that NDRCrimP 16 requires the disclosure of these documents, we did not decide whether this requirement is removed by the court's obligation to admit the records under NDCC 39–20–07(7). Therefore, because the prosecution was acting under an erroneous but unresolved interpretation of

---

under this exception unless the proponent of them furnishes to a party against whom they are now offered a copy thereof ... sufficiently in advance of its offer in evidence to provide the adverse party with a fair opportunity to prepare to meet them....

The prosecution argues that NDREv 803(8) docs not deal with findings of fact offered against a defendant in criminal cases. This argument overlooks our decision in *State v. Manke*, 328 N.W.2d 799, 802 (N.D.1982). The purpose of prohibiting the use of official factual findings against a criminal defendant is to avoid violating the defendant's right of confrontation. *See* Fed. R.Evid. 803(8)(C) advisory committee's note. In light of this purpose, we concluded in *Manke* that the exclusion of official factual findings under the hearsay rule is limited to cases where admission of the report would violate the defendant's right of confrontation. *Id.* at 804. *See* NDCC

39–20–07(9) ("... defendant in any criminal proceeding may subpoena, without cost to the defendant, the person who conducted the chemical analysis....").

**3.** We have affirmed the admission of similar documents in civil cases under NDREv 803(8) without discussing NDCC 39–20–07. *See Frost v. North Dakota Dep't of Transp.*, 487 N.W.2d 6, 11 (N.D.1992). However, our decisions affirming the admission of evidence under NDREv 803 and 804 do not imply that the evidence was not also admissible under NDCC 39–20–07(7). As a statutory exception to the hearsay rule, NDCC 39–20–07 "is independent of our Rules of Evidence and is perforce not exclusive." *State v. Schneider*, 389 N.W.2d 604, 606 (N.D.1986), *citing State v. Vetsch*, 368 N.W.2d 547 (N.D.1985). As in *Frost*, these records can be admissible under either NDREv 803(8) or NDCC 39–20–07(7).

the law, exclusion of evidence is not an appropriate sanction in this case.

 Zimmerman also argues that the prosecution did not establish a sufficient foundation for the analytical report of his blood test. The results of a blood-alcohol test must be admitted into evidence in an alcohol-related proceeding if the test was fairly administered according to the toxicologist's approved procedures. NDCC 39–20–07(8); *State v. Schwalk*, 430 N.W.2d 317, 322 (N.D.1988) (admission of report under (8) subject to foundational requirements of (5)). Whether a blood test was fairly administered is a preliminary question of admissibility left to the discretion of the trial judge. NDREv 104(a); NDREv 1008; *State v. Vogel*, 467 N.W.2d 86, 91 (N.D.1991). We conclude the trial court properly admitted Zimmerman's test results.

 The prosecution established a sufficient prima facie foundation for Zimmerman's blood-test results by introducing certified copies of the approved method of chemical analysis, the lists of approved devices and certified operators, a blank operational checklist (currently Form 104), and a completed checklist showing that Zimmerman's test complied with these approved procedures.[4] *Jordheim*, 508 N.W.2d at 881. After the prosecution introduced these documents, "the fairness and accuracy of the test was prima facie shown." *Pladson v. Hjelle*, 368 N.W.2d 508, 513 (N.D.1985). As we said in *Jordheim*, 508 N.W.2d at 881, unless the defendant introduces enough evidence to rebut this foundation of fair administration, evidence discrediting the test results will "affect the weight given the blood-test result and not its admissibility."

 Although documented compliance with the toxicologist's approved procedures is

also prima facie evidence of fair administration, NDCC 39–20–07(5) includes both fair administration and compliance with approved procedures as foundational elements for test results. *Jordheim*, 508 N.W.2d at 882. Therefore, to rebut the foundation documented by the prosecution, a defendant can establish either a scientifically-significant deviation from approved procedures or a lack of fair administration despite compliance with those instructions.[5]

 Zimmerman challenges the completeness of the toxicologist's approved procedures. Under NDCC 31–11–03(15), we presume the state toxicologist has sufficiently trained all certified operators, adopted accurate and reliable methods of chemical analysis, and listed all devices that should be approved. This presumption does not remove the prosecution's obligation to prove that a certified operator tested the sample using approved methods and devices. "To do so would effectively eliminate the [foundational] requirement[s] of § 39–20–07(5)." *Salter v. Hjelle*, 415 N.W.2d 801, 804 (N.D. 1987). However, the statute would also be meaningless if the prosecution were required to supplement these official records with expert testimony that they are complete and accurate. Therefore, once introduced, the documents are presumed to be sufficiently complete to show fair administration until the defendant shows that "the evidence as a whole clearly negates the presumed fact." NDCC 12.1–01–03(4)(a). As we said in *Bieber v. North Dakota Dep't of Transp.*, 509 N.W.2d 64, 68 (N.D.1993), Zimmerman had the burden of proving that the approved procedures followed in this case were deficient.

 Zimmerman claims that the autosampler and recorder-integrator referenced in the toxicologist's approved method per-

---

4. NDCC 39–20–07 is not the only way the state can establish fair administration of a blood test. *Brandt v. North Dakota State Highway Comm'r*, 409 N.W.2d 645, 647 (N.D.1987). Under our rules of evidence, even if the test was not performed according to approved procedures, the prosecution can introduce expert testimony to show fair administration. *See State v. Schwalk*, 430 N.W.2d at 324. However, this rule-based method of admitting test results will be unavail-

able where the prosecution relies on documents alone, without expert testimony.

5. Where the prosecution uses both the rule-based (testimony) and statute-based (documents) methods of proving fair administration, the defendant cannot rebut this showing simply by establishing a deviation from approved procedures, if the testimony shows fair administration despite the deviation. *See Brandt*, 409 N.W.2d at 647.

form chemical analysis and must be approved by the state toxicologist under NDCC 39–20–07(5). The toxicologist must approve the devices that chemically analyze blood samples. *Bieber,* 509 N.W.2d at 67.[6] Other auxiliary equipment or devices need not be approved to show compliance with the toxicologist's procedures. *Id.* However, as we said in *Schense v. Hjelle,* 386 N.W.2d 888, 891 (N.D.1986), approval may be required if the equipment "is of such a nature that, absent specific approval ... by the State Toxicologist, the test results would be so fraught with the possibility of error that the test could not be considered to be 'fairly administered' within the meaning of the statute."

James Hidding, the chemist who tested Zimmerman's blood, testified:

> The autosampler is a robotic type device. It doesn't have a face or anything else like that, but it has movement and it will move the—it has a carousel which moves the vials into position. There is a sensor that notes the location of each of the vials. The vials will drop down into a heated region which will heat the vial. Then the sample is taken, needle will puncture the top of the vial and draw out a given volume. There is a set volume loop on the autosampler which will draw out a given volume of vapor, and this gas then will be seen through the gas chromatograph.

Hidding explained that this vapor is separated by the gas chromatograph and measured by the flame ionization detector, which is "one of the components of the gas chromatograph." He described the purpose of the recorder-integrator as "recording the signal that's derived from the detector." The trial court properly concluded from Hidding's expert testimony that these auxiliary devices did not perform chemical analysis and do not have to be approved to show compliance with approved procedures.

■ Zimmerman also failed to overcome the presumption that the toxicologist has listed all devices that need to be approved for a test to be fairly administered. Hidding testified that because Zimmerman's blood and an "internal standard" solution are tested at the same time, a difference in the temperature or amount of vapor injected by the autosampler "would not affect the test results." He said that he would notice if the autosampler is not working properly because he "wouldn't get any results—acceptable results." Hidding also testified that he would know immediately if the recorder-integrator was not working properly because the linear breakdown of the standard solution would not "be within a known range or result." Thus, as in *Bieber,* 509 N.W.2d at 68, Zimmerman failed to show that his test results were "fraught with the possibility of error" because a malfunction or defect in these auxiliary devices "would go unnoticed when ... [Hidding] conducted his analysis of the blood sample."

To support his argument that these devices should have been approved, Zimmerman describes the substantial changes made in the approved method to incorporate the use of the autosampler and recorder-integrator. However, the revision of the approved method to include these additional devices does not require that they be approved by the toxicologist. Zimmerman still had to prove that these devices either perform chemical analysis or that his results are "fraught with the possibility" of undetected error. From the evidence in this case, the trial court's conclusion that Zimmerman's blood test was fairly administered without the toxicologist's approval of either the autosampler or recorder-integrator was not an abuse of discretion.

■ Zimmerman also challenges the toxicologist's "Approved Method To Conduct Blood Alcohol Analysis 2" (2–93). He questions: "Was the Approved Method to Conduct Blood Testing Used?" However, as the trial court observed, Zimmerman is not suggesting that Hidding deviated from the toxicologist's instructions, but is "taking issue with the approved method" itself. Zimmerman argues that the approved method is deficient because it does not tell certified operators when to turn on the gas chromatograph.

---

6. Chemical analysis is currently performed by an intoxilyzer (breath) or a gas chromatograph (blood). These are the only approved devices currently listed by the toxicologist.

Zimmerman did not present any evidence that his test results were inaccurate or unreliable because the approved method did not tell Hidding when to press the start button on the gas chromatograph. Although Hidding was certified before the toxicologist approved the method used to analyze Zimmerman's blood, Zimmerman did not introduce any evidence to rebut the presumption that certified operators are sufficiently trained. To the contrary, Hidding's testimony indicates that he was well versed in the operation of the chromatograph. In addition, the toxicologist's list of certified operators shows that Hidding was "trained and certified to conduct blood alcohol analysis by *an* approved gas chromatographic method," and that this certification expires on "the last day of [Hidding's] ... employment in the Office of the State Toxicologist." (emphasis added). The toxicologist clearly intended that Hidding's certification would continue after the new method of analysis was approved.

Zimmerman did not introduce any independent evidence undermining the accuracy and reliability of his blood-test results based on these alleged short-comings in the approved method and list of certified operators. *See City of Fargo v. Komulainen*, 466 N.W.2d 610, 612 (N.D.1991) (defendant can prove lack of fair administration despite compliance with approved procedures). Therefore, Zimmerman failed to rebut the prosecution's prima facie evidence of fair administration and the trial court did not abuse its discretion in admitting the analytical report.

Zimmerman was properly stopped, and the trial court properly admitted the analytical report of his test results. We affirm Zimmerman's conviction.

VANDE WALLE, C.J., and
SANDSTROM and NEUMANN, JJ., concur.

LEVINE, Justice, concurring in the result.

Zimmerman raises four issues on appeal:
"1. Was probable cause necessary, pursuant to N.D.C.C. 29–29–21 for the stop of Zimmerman's vehicle?
"2. Pursuant to Rules 802 and 803 N.D.R.Ev. were certain exhibits improperly accepted into evidence, and if said documents were improperly accepted, should the court have admitted the blood test results?

"3. Were devices used in the testing process which were not approved by the State Toxicologist?

"4. Was the approved method to conduct blood testing used?"

I agree with the majority's analysis and resolution of the first two issues. The simple answer to the third issue is because Zimmerman did not sustain his burden of proving the autosampler and recorder-integrator were devices used to analyze his blood sample, the trial court did not err in admitting the test results. *Schense v. Hjelle*, 386 N.W.2d 888, 891 (Levine, J., VandeWalle, J., concurring) (N.D.1986). I would not address issue four because Zimmerman did not brief that issue. His argument in toto consisted of the following question: "How can a blood test be done with a device and according to methods approved by the State Toxicologist when the only device approved by the State Toxicologist is operated without direction from the approved method?" The answer is not ours to give. Zimmerman should have sought it from the State Toxicologist or his own expert.

The problem I have with the majority opinion is the breadth of its response to Zimmerman's sparse four pages of paltry argument. I would have preferred to use a peashooter, not a Uzi.

I concur in the affirmance of the conviction.