STATE of North Dakota, Plaintiff and Appellee,

v.

Dwight E. ERICKSON, Defendant and Appellant.

Cr. No. 930321.

Supreme Court of North Dakota.

June 15, 1994.

Thomas M. Tuntland, Mandan, for defendant and appellant.

Rick Lee Volk, Asst. State's Atty., Bismarck, for plaintiff and appellee.

LEVINE, Justice.

Dwight E. Erickson appeals from judgment of conviction for being in actual physical control of a motor vehicle while under the influence of intoxicating liquor. We affirm.

On December 6, 1992, while on his way to work, a Burleigh County detention officer noticed a pickup stopped on an approach with its lights on and the engine running. The officer stopped and saw Erickson slumped over the steering wheel. The officer unsuccessfully tried to rouse Erickson and then left. He gave a Burleigh County Deputy Sheriff, Deputy John Schaffer, a description and the location of the pickup. Schaffer found the pickup with its lights off and its engine running. Erickson was slumped over the steering wheel, with a can of beer between his legs. Schaffer woke Erickson, administered field sobriety tests, and arrested him. Erickson consented to a blood test, and the results admitted at trial showed a 0.21% blood-alcohol content.

Erickson was charged with being in actual physical control of a motor vehicle while under the influence of intoxicating liquor. His first jury trial ended in a mistrial. After his second trial, the jury convicted Erickson of actual physical control. Erickson now appeals.

On appeal, Erickson challenges the admission of his blood-test results. He argues that the trial court erred in admitting the results of the blood-alcohol analysis because (1) the recorder integrator, one of the components of the gas chromatograph used to test Erickson's blood, is a "device" and must be approved by the State Toxicologist; (2) the nurse who drew the blood sample used a second disinfectant swab but did not indicate or identify it on the form; and (3) the nurse stuck Erickson in both arms with the same needle before obtaining a blood sample.

■ Admission of chemical blood-test results is governed by NDCC § 39–20–07(5): "The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices ap-

proved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the person requested to take the chemical test."

Admissibility of blood-test results is a preliminary question left to the discretion of the trial judge. *E.g., State v. Reil,* 409 N.W.2d 99, 102 (N.D.1987). Once the results are admitted, the jury may assess their weight. *Id.*

■ Erickson's first argument is that his blood test was not fairly administered and was therefore inadmissible because the recorder integrator was not approved by the State Toxicologist.

We have interpreted section 39–20–07(5) to require the State Toxicologist to approve those devices that perform chemical analysis or are "so fraught with the possibility" of undetected error. *See State v. Zimmerman,* 516 N.W.2d 638, 640 (N.D.1994); *Bieber v. North Dakota Dep't of Transp.,* 509 N.W.2d 64, 67–68 (N.D.1993); *Schense v. Hjelle,* 386 N.W.2d 888, 890–91 (N.D.1986).

We recently rejected an argument similar to Erickson's in *Zimmerman, supra.* Zimmerman argued that the recorder integrator used in conjunction with the gas chromatograph to test his blood was a device that must be approved by the State Toxicologist under NDCC § 39–20–07(5). The chemist in that case testified that the recorder integrator recorded the signal generated by the flame ionization detector, another component of the gas chromatograph. He also testified that any malfunction in the recorder integrator would be immediately detectable because the result would be outside a known range. We concluded that Zimmerman failed to show that the recorder integrator performed chemical analysis or was faught with the possibility of undetected error and, thus, the trial court did not abuse its discretion in admitting the blood-test results.

Here, Erickson presented no evidence to show that the recorder integrator performs chemical analysis. Daniel Pederson, the chemist who tested Erickson's blood, testified that "[t]he recorder integrator shows when things come out of the gas chromatograph," but did not testify that the recorder integrator performs any sort of chemical analysis. Although Erickson showed that the recorder integrator was a necessary component of the gas chromatograph, he failed to show that a defect in the recorder integrator would go unnoticed. Erickson questioned Pederson, "And if the recorder integrator is not working, is not in good working order, you would have no confidence whatsoever in the analysis?" Pederson responded, "Yeah, because you wouldn't get no peaks out." Obviously, if the absence of peaks in the output indicates a malfunction in the recorder integrator, as Pederson testified, the malfunction is detectable. Therefore, we conclude that the trial court did not abuse its discretion in determining that the recorder integrator is not an instrument so fraught with the possibility of undetected error in the test results that it is a device which must be approved by the State Toxicologist, and admitting the blood-test results over Erickson's objection on that ground.

■ Erickson's second argument is that his blood test was not fairly administered and was therefore inadmissible because the nurse did not indicate that she used a disinfectant swab not included in the blood-test kit.

■ In *State v. Jordheim,* 508 N.W.2d 878, 882 (N.D.1993), we held that certified compliance with Form 104 (6–92) was prima facie evidence of fair administration of a blood-alcohol test for purposes of admission under NDCC § 39–20–07(5). The defendant may rebut the prosecution's documentary foundation of fair administration by establishing either a deviation from approved procedures or a lack of fair administration despite compliance. *Zimmerman, supra* 516 N.W.2d at 640. Once the defendant has successfully rebutted the prosecution's prima facie showing, the prosecution may present

testimony to show fair administration despite defendant's rebuttal. *Id.* at 643.

The nurse who drew Erickson's blood sample used two disinfectant swabs, the one contained in the blood-test kit and another one. Form 104 (6–92) has a box for the nurse or medical technician who draws the sample to indicate the disinfectant used: either "Used disinfectant provided in kit" or "Used an alternative disinfectant (specify)." Here, the nurse checked off "Used disinfectant provided in kit" but did not indicate that she used a second disinfectant swab as well. However, Deputy Schaffer testified that the second disinfectant swab was the same type of disinfectant as provided in the blood-test kit. Therefore, the trial court did not abuse its discretion in concluding that Erickson's blood test was fairly administered despite the nurse's failure to indicate that she used a second disinfectant swab.

■ Erickson's last argument is that his blood test was not fairly administered and was therefore inadmissible because the nurse stuck Erickson in both arms with the same needle before obtaining a blood sample.

Form 104 (6–92) contains the State Toxicologist's approved method for the collection of blood samples. *Jordheim, supra* at 882. In its current form, it directs the nurse or medical technician drawing the sample to use the needle provided in the kit. Previously, the approved method specifically directed use of a sterile needle to draw the blood sample.

Erickson argues that despite the nurse's superficial compliance with the approved method, *i.e.,* she used the needle in the kit, his test was not fairly administered because the needle was not sterile after the first attempt. Pederson testified that microbial contamination and fermentation of the blood sample were possible under specific conditions; however, Erickson failed to show that any of those conditions were present in this case. Although we may surmise that a sterile needle should be used to draw the blood sample, we are not persuaded that the evidence showed that, for the purpose of establishing foundation for admissibility, Erickson's blood test was not fairly administered. Therefore, we conclude that the trial court did not abuse its discretion in determining that Erickson's blood test was fairly administered despite the nurse's failure to use a second needle to draw the sample. The weight of the evidence on the issue was for the jury.

Affirmed.

VANDEWALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.